BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
DAVID G. ROBINS, IDAHO STATE BAR NO. 8494
FRANCIS J. ZEBARI, IDAHO STATE BAR NO. 8950
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>SARAH ELIZABETH GEORGE,<br><br>                    Defendant. | Case No. 1:26-mj-00044-DKG<br><br>**MOTION FOR DETENTION** |

Pursuant to 18 U.S.C. § 3142(e) and (f), the United States requests the Defendant's detention pending trial.

**I.      STATUTORY ANALYSIS**

**A detention hearing is authorized to determine whether any condition or combination of conditions will reasonably assure the appearance of the Defendant as required and the safety of any other person and the community because this case involves a circumstance outlined in 18 U.S.C. § 3142(f)(1):**

MOTION FOR DETENTION - 1

( X )    the Defendant is charged with a crime of violence, as defined in 18 U.S.C.
§ 3156.[1]

( X )    the Defendant is charged with an offense listed in section 2332b(g)(5)(B) for
which the maximum term of imprisonment of 10 years or more is prescribed.[2]

**A detention hearing is authorized to determine whether any condition or combination of conditions will reasonably assure the appearance of the Defendant as required and the safety of any other person and the community because this case involves a circumstance outlined in 18 U.S.C. § 3142(f)(2):**

( X )    a serious risk exists that Defendant will flee.

( X )    a serious risk exists that Defendant will obstruct or attempt to obstruct justice, or
threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a
prospective witness or juror.

**( X ) There is a statutory rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because all of the following exist:**

1.    This case involves a situation described in 18 U.S.C. § 3142(f)(1), as set forth
above.

The Government alleges that, based on the following factors to be considered by the
Court set out in 18 U.S.C. § 3142(g), there are no conditions of release that will reasonably

---

[1] For purposes of the Bail Reform Act, a "crime of violence" mean "(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4).
[2] As to offenses under section 2332b(b)(5)(B), such crimes include 18 U.S.C. § 844(f)(2) and 844(i), which are the crimes the Defendant is currently charged with.

assure the appearance of the Defendant as required and/or the safety of any other person and the community:

1.      The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of 18 U.S.C. § 1591 (sex trafficking of children), a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive or destructive device;

2.      The weight of the evidence against the Defendant;

3.      The history and characteristics of the Defendant, including:

   (a) the Defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   (b) whether, at the time of the current offense or arrest, the Defendant was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state or local law; and

4.      The nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release.

For these reasons, the Government requests that the Defendant be detained pending trial in this case.

**II.    <u>PROFFER</u>**

1.      <u>The Government incorporates by reference the affidavit in support of the issuance of a criminal complaint.</u>

The Government hereby incorporates by reference the affidavit submitted in support of the issuance of a criminal complaint.

MOTION FOR DETENTION - 3

2.     <u>the Defendant committed a significant criminal act.</u>

On February 18, 2026, at approximately 2300 hours, an individual later identified as the Defendant[3] stole a Canyon County Paramedics ambulance from outside the St. Luke's Hospital Emergency Center, shortly after the ambulance transported a patient from the St. Luke's Nampa, Idaho campus.

At approximately 2310 hours, the Defendant, whose identity was unknown at the time, drove the ambulance through the south entrance doors and inside the lobby of the Portico Building. News outlets in the region have recently reported that GSA leased space in the Portico Building for DHS/ICE.

Shortly thereafter, officers from Meridian Police Department arrived in the vicinity and were unable to locate the Defendant. Tactical teams and other law enforcement members secured the property for further investigation, including obtaining CCTV of the incident from St. Luke's Security.

CCTV revealed that the Defendant approached the ambulance, entered the driver's seat, and drove away. The Defendant appeared to be wearing a dark beanie, gloves, face mask, dark-colored jacket, tan-colored pants, and dark shoes.

On February 19, 2026, law enforcement obtained CCTV footage from various businesses in the area, yielding the following facts, all which occurred on the date of the incident, February 18, 2026.

_____

[3] The assertion the individual is George is based on the totality of the evidence as set forth herein. Investigators did not identify the suspect as George until February 23, 2026, as set forth in this affidavit.

MOTION FOR DETENTION - 4

At approximately 2238 hours, CCTV from Primary Health, located at 3280 East Lanark Street, Meridian, Idaho, showed that a dark-colored pickup truck parked at the business. Primary Health was closed at this time. A subject matching the Defendant's description was observed headed South, on foot, in the direction of St. Luke's. This was approximately 22 minutes before the Defendant stole the ambulance, which was at approximately 2300 hours.

At approximately 2304 hours, CCTV from inside from the ambulance's onboard computer revealed that the Defendant parked the ambulance in a nearby lot, exited, and loaded at least two gas jugs and a plastic bag inside the ambulance. These items appeared to have been stashed behind bushes on the edge of the parking lot prior to stealing the ambulance.

At approximately 2310 hours, CCTV from inside the lobby of the Portico Building and from the ambulance revealed that the Defendant exited the ambulance, recovered the gas jugs from the back of the ambulance, and poured the contents of the jugs around the lobby floor. Shortly thereafter, the Defendant fled the building on foot, heading north, once law enforcement arrived in the vicinity.

At approximately 2313 hours, a dash camera from a Meridian Police Department unit captured footage of the Defendant crossing Fairview Ave., heading north towards Primary Health. At approximately 2315 hours, CCTV from RC Willey's front parking lot, located at 3301 E. Lanark St., Meridian, Idaho, captured the Defendant walking north through the lot, towards Primary Health. At approximately 2322 hours, the Defendant entered a Dodge Dakota, drove westbound towards Eagle Rd., then turned north on Eagle Rd. This was approximately ten minutes after the Defendant was observed on CCTV exiting the Portico Building after crashing the ambulance.

The distance between the Portico Building, across Fairview Ave., to Primary Health is

approximately 0.5 miles, which Google Maps indicated is approximately an 11-minute travel time by foot. On February 19, 2026, law enforcement personnel trained in crime scene processing and evidence collection processed the crime scene at the Portico Building. Law enforcement located a plastic Walmart bag in the passenger floorboard of the ambulance. The bag resembled the bag that the Defendant carried into the ambulance during the crime. The bag contained a bottle of lighter fluid.

Two plastic red gas jugs were also located in the lobby, near the crashed ambulance. These specific brands of lighter fluid and gas jugs are commonly found at Walmart. Law enforcement canvased the closest Walmart to the scene, located at 4051 E. Fairview Ave., Meridian, Idaho. Walmart identified and provided a receipt, dated February 18, 2026, at 2117 hours, which contained several items observed in the Defendant's possession during commission of the crime. The receipt is depicted below:



Additionally, Walmart provided photographs of the Defendant who purchased the aforementioned items, which matched the description of the skin color, build, top, pants, and footwear of the Defendant. The bottom of a cell phone is observed sticking out of the

Defendant's right pants pocket. Additionally, two gas jugs and a Walmart bag were carried by the Defendant. Two photographs of this are depicted below:





Walmart provided photographs of the vehicle that the Defendant departed Walmart in. The vehicle matched the description of Dodge Dakota. The vehicle appeared to be a dark-colored Dodge pickup truck bearing an Idaho plate. The vehicle is depicted below:

MOTION FOR DETENTION - 7



On February 21, 2026, law enforcement obtained CCTV footage from various businesses in the area, to include the Fred Meyer gas station located at 1850 E. Fairview Ave., Meridian, Idaho. This footage shows that at approximately 2129 hours on February 18, 2026, that the Defendant purchased gas at the Fred Meyer gas station using a financial transaction card. The Defendant pumped gas into two gas jugs and added gas to Dodge Dakota. The Defendant departed at 2139 hours. Two photographs of this are depicted below:



MOTION FOR DETENTION - 8

The Defendant intentionally stole a Canyon County Paramedic ambulance and used it to force entry and cause damage to 3300 East Louise Drive, a building that was partially leased by DHS/ICE. It is also believed that the Defendant attempted to further damage the building by pouring gasoline on the lobby floor with intent of setting fire to it.

*Investigation to Identify Sarah Elizabeth George*

As previously mentioned, the identity of the Defendant was unknown at the beginning of the investigation. Law enforcement was able to identify her, and identify corroborating facts, as detailed below.

On February 23, 2026, law enforcement received business records from Fred Meyer for the date/time of the purchase of gasoline as observed in the surveillance video. According to records, there was a loyalty/rewards card used in her name (Sarah Elizabeth George). Law enforcement obtained the financial transaction card number used, but no name was associated with the number as provided by Fred Meyer. Law enforcement is awaiting additional legal process to determine the identity of the cardholder.

Law enforcement searched the Idaho DMV (Department of Motor Vehicles) database with the name "Sarah Elizabeth George." Law enforcement was able to locate a DMV photo and physical characteristic identifiers for Sarah Elizabeth George. They match the physical characteristics as observed in the surveillance footage from Walmart and Fred Meyer.

With the name "Sarah Elizabeth George," law enforcement searched the Idaho DMV (Department of Motor Vehicles) database. Law enforcement was able locate a DMV photo and physical characteristic identifiers for Sarah Elizabeth George. They match the physical characteristics as observed in the surveillance footage from Walmart and Fred Meyer. Here is her DMV photo:

MOTION FOR DETENTION - 9



Additionally, business surveillance was able to photograph the inside of her wallet at the time of her transaction to purchase the items noted above. Highlighted in a red circle, it appears as:



The physical characteristics are consistent across the DMV records and surveillance photos. For further example, here is an image of her stealing the ambulance:

MOTION FOR DETENTION - 10



Here is an image of her inside the portico building as indicated by the red circle:



These photos appear consistent with the Walmart and Fred Meyer photos, as depicted below:

MOTION FOR DETENTION - 11



Law enforcement did additional research on names/vehicles pursuant to the Idaho DMV records. Law enforcement found a 2005 Blue Dodge Dakota truck registered to individuals with the last name of George. Their relationship with Sarah Elizabeth George is unknown at this time, but it is consistent with the same truck used as transport on the night of the crime. Law enforcement was able to observe the truck on surveillance footage and compare it to photographs taken by law enforcement on February 23, 2026, while surveilling the residence where George is believed to reside. Law enforcement noted consistent features that suggest it is the same truck.

Below is a photo of truck as seen by Walmart surveillance:



Below is a photo of the truck taken by law enforcement on February 23, 2026. The red circles indicate similarities as observed in the surveillance photo to law enforcement:



Additionally, the faded paint, make, model, and color all match.

On February 6, 2026, local law enforcement in Idaho conducted a traffic stop with George. A still from the officer's body-worn camera depicts George providing her Idaho state driver's license. The officer's report indicates she was driving a blue Dodge Dakota, matching the vehicle described herein.



Law enforcement found what they believe to be a Facebook page linked to George. This is based on the identifiers on the page itself and pictures as depicted below.



On that same Facebook page, law enforcement located the following post on February 18, 2026, at 0613 hours:

MOTION FOR DETENTION - 15



### III.   <u>ANALYSES</u>

1.   <u>There is a serious risk the Defendant will flee.</u>

There is a serious risk the Defendant will flee for the following six reasons:

First, the Defendant engaged in a brazen, dangerous, unprovoked, premeditated attack that gravely endangered the community. A person who is capable of such actions cannot be expected to act rationally. A person who is capable of such actions cannot be trusted to deny impulse. A person who engages in such actions cannot be trusted to remain present in the jurisdiction while facing a mandatory minimum charge.

Second, the Defendant, during the commission of the offense, undertook efforts to conceal her identity and avoid criminal liability. She concealed her face as best she could (by

MOTION FOR DETENTION - 16

wearing a beanie and mask), covered her hands (with gloves) as she committed the crime. She parked her vehicle some distance. She staged the destructive materials and was able to make good an escape from the scene of the crime. She thought to use a vehicle intractable to her, an ambulance, as a battering ram. This forethought, planning, and execution to avoid detection and steal an ambulance underscores a risk of flight, in that she would undertake it (risky behavior manifested in original crime) and is capable (she undertook obfuscation efforts).

Third, the Defendant was able to perpetrate considerable carnage by sophisticated means. Knowing how to steal an ambulance, thinking of stealing an ambulance, driving it, staging materials, crashing it, and making good an escape is a sophisticated crime relative to other direct attacks. While the trail of facts leading to her identity suggest foolishness in some aspects of her conduct (e.g., using her rewards card to purchase gas), she did not know law enforcement would be able to trace her back that far. Indeed, if not for her failure to ignite the poured gasoline, it is likely the Walmart bag would have been destroyed and the trail denied. In sum, her sophistication underscores a risk, as if she puts her mind to it, she would be able to achieve flight through resourceful means.

Fourth, the Defendant was able to avoid detection for several days after the commission of the crime. It was a monumental effort to find the Defendant that consumed tremendous law enforcement resources. This is an indicator of her ability to conceal herself and suggests flight.

Fifth, the Defendant's Facebook posts indicate hostile sentiment to the Court, the Government, and federal authority. Her posts of the White House in flames and accompanying texts suggest she does not recognize her conduct as wrong nor a criminal prosecution as justified; unlike other Defendants who may commit ideologically sterile crimes, the evidence suggests that she committed this act for terroristic reasons. This dynamic weighs in favor of finding her as a

substantial risk of flight. One who finds it acceptable to attack and burn a building due to political disagreement cannot be expected to attend court proceedings for a prosecution she considers morally unjustified. Coupling that with her extraordinary actions, there is a substantial risk of flight.

Sixth, the harm wrought and inflicted suggests a troubling psychology. The Defendant's devil-may-care attitude towards the extreme public risk can hardly be overstated. She stole an ambulance—a tool by which first responders save lives—and damaged it while trying to destroy it. By attempting to burn the building, she showed no regard for the potential occupants (e.g., night workers, janitors, first responders) and the mortal risks she inflicted. A person capable of such conduct, impulsiveness, and callous disregard for others present a likely risk of flight.

Seventh, the Defendant's potential criminal liability, in terms of a carceral punishment, is significant. The crimes charged carry a mandatory minimum of five years imprisonment. Currently, the Government calculates her guideline range as 324-405 months.[4] Additionally, the criminal restitutio she will owe for the carnage of her criminal actions provides massive incentives for her to flee. Accordingly, there is a substantial risk of flight given the extraordinary penalties for her crime.

In sum, the Defendant committed an extremely dangerous crime for terroristic reasons. She presents a serious risk of flight, and a detention hearing is authorized.

      2.    <u>There is a serious risk that the Defendant will obstruct or attempt to obstruct justice, or threaten, injure, intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.</u>

---

[4] A back of the envelope calculation is as follows: USSG § 2K1.4(a)(1) Base Offense Level= 24, USSG § 3A1.4(a) Terrorism +12, equals a total offense level for this count of 36. Her criminal history category would be VI, given USSG § 3A1.4. Thus, her applicable guideline is 324 to 405 months of incarceration (a number subject to modification by maximum penalties).

MOTION FOR DETENTION - 18

The attack on the Portico North building, based on current evidence and reasonable inferences, was not a random attack. It was most probably an attack on the DHS/ICE facilities contained therein. Given the Defendant's social media posts, this is a supported supposition.

If the Defendant can attack a DHS/ICE facility over perceived grievances of law enforcement, it then is axiomatic that there is a serious risk the Defendant will attempt to obstruct justice in her own prosecution. Put another way, she has already attempted to thwart justice and law enforcement activities in cases unrelated to her own. It easily stands to reason that she would do the same when facing sever penalties in her own prosecution. And given the incredibly destructive means she used to commit the crime, the risk is serious and acute. Detention is appropriate.

IV.    **CONCLUSION**

Given the standards of law, the Court should order continued custody of the Defendant and a detention hearing unless otherwise waived.

Respectfully submitted this 24th day of February 2026.

BART M. DAVIS
UNITED STATES ATTORNEY
By:

_____
DAVID G. ROBINS
Assistant United States Attorney

MOTION FOR DETENTION - 19